JOHN KINNEY ET AL., ADMINISTRATORS, &c., v. THE CENTRAL RAILROAD COMPANY OF NEW JERSEY.

1. A contract, that in consideration of a free passage a passenger will assume the risk of injuries to his person from the negligence of the servants of the railroad company, is valid in law.

2. A passenger who receives, knowingly, a free ticket with an endorsement of such a contract upon it, will be bound by the terms of such contract, and cannot recover for injuries sustained from the cause specified.

This cause was tried before the Warren Circuit. It was a suit by administrators, founded on the death of their intestate, while in the cars of the defendants, occasioned, as it was alleged, by the negligence of the servants of the rail-

road company. It appeared that the deceased had applied, on the occasion in question, to one of the agents of the company for a free pass, and .that he had been informed that if he took such pass he must assume all risks of accident, and that he thereupon received from such agent a ticket having upon it the printed endorsement following, viz., " This pass to be delivered to the conductor. The person who accepts this free ticket thereby assumes all risk of accident, and in consideration of its receipt expressly agrees that the company shall not be liable, under any circumstances, whether of negligence of their agents or otherwise, for any injury to the person, or for any loss or injury to his or her property while. using this ticket."

At the trial the Chief Justice instructed the jury that he should assume, for the purposes of the case, that the accident in question had occurred by the carelessness of the agents of the defendants, but that if they believed the deceased was riding under the contract endorsed on the ticket, the defendants were entitled to a verdict. The question of law upon which the case was thus put, was reserved.

Case argued before BEASLEY, C. J., and Justices VREDEN-BURGH, DEPUE, and WOODHULL.

For the plaintiffs, *J. F. Dumont* and *J. F. Randolph.*

For the defendants, *J. G. Shipman* and *B. Williamson.*

The opinion of the court was delivered by

BEASLEY, C. J. The question in this case, which we are now called on to decide, is not as to the construction of the contract, out of which the rights and liabilities of the parties respectively arose, but exclusively as to its legality. It appeared, to demonstration, at the trial, that the deceased, with full knowledge and of his own accord, entered into the agreement, for the consideration of a free passage, to assume the risk to himself of all accidents which might occur

through the negligence of the agents of the railroad company. An accident from such cause did happen, causing the death of the deceased, and the naked point for judgment is, whether the defendants are legally dispensed from responsibility by force of such agreement.

This inquiry I must be permitted to regard as quite aside from many of the topics so learnedly discussed before us upon the argument. We were referred to many cases with regard to the incapacity of the common carrier to force, by means of general notices, or the delivery of tickets containing special stipulations, contracts upon their employers, and cases were cited to show that agreements, couched in general terms, imposing the risk of carriage on the bailor, would not be interpreted to extend to losses proceeding from the negligence of the bailee, or his agents. These subjects are not considered pertinent, because, in the present case, it was clear that the contract between the deceased and the carriers received the voluntary assent of the former, and because such contract, in clear terms, gave immunity to the carriers from the negligent acts of their servants. As I have already remarked, the inquiry goes to the point, singly, as to the legal validity of agreement which these parties, beyond all question, entered into in good faith.

But another line in the reasoning of the counsel of the plaintiffs, seems to require a more deliberate notice. It was insisted that a common carrier could not, even by express contract, exempt himself from liability for his own negligence. But even on this head it does not strike my mind that it is necessary, for any present purpose, to enter upon the discussion of this vexed question. The duty of the common carrier is *sui generis*. His obligations are so peculiar, it is difficult, perhaps impossible, to apply closely, by way of analogy, the rules of law which control his conduct, and give rise to his responsibilities, to the situation of other contractors. By the usual principles of law, the common carrier is, with narrow exceptions, an insurer of the safe delivery of the goods coming to his hands. So, too, he is

bound, as a general thing, to carry all the goods brought to him in the ordinary course of his business. These are obligations falling upon the common carrier by force of his employment, which is of a *quasi* public character. When, therefore, questions arise as to the right of these *social* agents, so to speak, to free themselves, by contract or otherwise, from the burthens set upon them by law, it is obvious that considerations which are totally foreign to ordinary cases enter into the discussion. Consequently, all reasoning on this theme must turn on motives of policy and general convenience. And it is on this account that I think that a solution of the question, whether a common carrier can or cannot exempt himself by express agreement, from the obligation which he takes from the law to conduct his business without negligence, cannot have a controlling effect upon the present subject of inquiry. This conclusion is founded in the fact, that I do not regard the contract now in controversy as one which the defendants have made in their *character of common carriers.* I think it plain they must, in this respect, be placed on the foot of gratuitous bailees. Every test which can be applied to the case will show that the defendants on this occasion, in this particular matter, were not common carriers. The deceased did not bargain with them on the basis of any such employment. If he had seen fit, he had a right to deal with them in their general character, but he did not do so. As a member of society, it was his right, upon paying his fare, to require of these defendants to carry him upon the terms which the law imposed upon them, but, instead of exacting this right, he solicited a mere benevolence, the discharge of which it would not be reasonable to consider as any part of the business of the carrier. The legal existence of this contract, therefore, cannot be impugned on the ground so often advanced where common carriers are concerned—that it is unwise to permit those public employés to throw off any given part of their common law liability. The question ventilated must be settled by such rules of law as are applicable to the ordinary class of

gratuitous bailments, or of persons rendering an unbought courtesy.

Nor does the objection that this contract is not consistent with good morals or sound policy, appear to me of much weight. This consideration was urged on the argument, in rather a wider form than the facts will warrant, for the proposition was, that it is pernicious and immoral to allow a person to contract for a discharge from the effects of his own negligence. But the question to be decided is narrower, the case showing merely the presence of negligence in the servants of the defendants, but none whatever in the defendants themselves. Consequently, we have to do simply with the more limited proposition, does the law prevent a person, in a matter not connected with any public employment, to stipulate for an immunity from the results of the omissions or oversights of his own agents.

Now I think it will be plain to any one who will survey this ground, that there is nothing in natural justice which would hold the master responsible for the negligence of his servant. With relation to the moral code, a man performs, in this particular, his whole duty when he exercises proper prudence and care in the selection of competent agents to conduct his affairs. The rule of *respondeat superior*, is one of great severity, and has been adopted, not from its intrinsic equity, but from its general convenience. It subsists, incontestably, as an established legal technicality. Can it not be waived, and another rule adopted on any special occasion, between party and party? I confess to an entire inability to comprehend the force of the objections to this being done. The fallibility of all human agency is an imperfection not to be eliminated from any transaction dependent on the employment of such means. In the absence of an express contract, the law, in order to lay down a fixed rule, throws the liability on him who employed the agent; but what, in the nature of the transaction, is there, which should prevent any party contracting with such principal to take on himself the risk of the servant's misconduct. It was suggested

that the tendency of any exemption of the principal, would be to remove from common carriers one of their motives to exercise care in their business; but the two-fold answer is, first, that the present discussion does not, as has been already shown, relate to the contract of a common carrier; nor, second, does it involve any consideration of the misconduct of the principal. The whole question being, whether the master may not avoid the consequences, not of his own, but of his servant's omissions. The contract before us, so far as its terms are at present involved, did not contemplate the introduction into the affair of any element of danger which was not necessarily inherent in it—that is, the fallibility of human conduct, over which the carrier had no control. The transaction is virtually this : the carrier says to the passenger, I have employed careful and skillful men to manage my locomotive and cars; but they are human, and they may fail in their duty, to your danger. The passenger says : in consideration of a free passage, I will run that risk. The bargain is struck on these grounds, and I am clear that it would be a great refinement to impeach it as being prejudicial to public interests.

Nor do I find such a contract in any respect incompatible with legal principles on analogous subjects. Agreements of fire insurance are familiar instances much in point, for they are, in general, stipulations for indemnification against the results of a party's own negligence or that of his employés. In truth, it is obvious that the doctrine asserted in support of the case of the plaintiffs, would, if carried to its logical result, subvert, equally with the present contract, almost the entire system of bailments ; for that system is erected, in part, on the principle of allowing an immunity to the negligence of the bailee. Thus, in the case of a deposit, the depositary, in the Roman law, was answerable for the thing left with him in case of its loss only for fraud, and in the English and American law such bailee cannot be held, unless negligence so gross as almost to be evincive of bad faith, can be imputed to him. In such cases, then, the bailor virtually

agrees to discharge the bailee from all responsibility for ordinary neglects, such as careless men are apt to fall into, and the law does not scruple to enforce such contracts. Such agreements, in kind, are not distinguishable from the stipulation now sought to be impeached. Another analogy will be found in that long line of decisions which have so completely established the proposition that even common carriers can, by express agreement, limit, to some extent at least, their common law liability. In reply to observations on the impolicy of such a relaxation, Baron Parke (*Carr* v. *Lancashire and Yorkshire R. R.*, 14 *L. & Eq.* 340,) compressed the argument into a sentence, and said : " We ought not to fritter away the meaning of contracts merely for the purpose of making men careful."

From these considerations I have come to the conclusion, that the contract which the deceased made with the defendants was valid in law, and under the circumstances presented at the trial, afforded a full defence to this action.

It will be perceived from the following citations, that a similar doctrine has been held by the courts of New York. *Wells* v. *N. Y. Central R. R. Co.*, 24 *N. Y.* 181 ; *Perkins* v. *N. Y. C. R. R. Co.*, 24 *Ibid.* 208 ; *Welles* v. *N. Y. C. R. R. Co.*, 26 *Ibid.* 641 ; 25 *Ibid.* 443.

It has not seemed to me proper to consider the other question mooted on the argument, whether the memorandum endorsed on the ticket in question, was of such a character as to require an United States revenue stamp. Such objection was not made at the trial, and it is now quite too late to interpose it. . The rule is entirely settled, that if an imperfection of this character is relied on, the point must be raised before the instrument is put in evidence. *Robinson* v. *Lord Vernon*, 7 *Com. B.* (*N. S.*) 231 ; *Field* v. *Wood*, 7 *Ad. & El.* 114 ; *Israel* v. *Benjamin*, 3 *Camp R.* 40.

The defendants are entitled to judgment on the verdict.

AFFIRMED, 5 *Vroom* 513.