232    COURT OF ERRORS AND APPEALS.

Beck v. Penna. R. R. Co.          *63 N. J. L.*

HENRY BECK, DEFENDANT IN · ERROR, v. THE PENNSYL-
VANIA RAILROAD COMPANY, PLAINTIFF IN ERROR.

Argued March 8, 1899—Decided June 19, 1899.

In an action to recover damages from a railroad company for an
injury received while the plaintiff was in its employ, it was proved
by the company that it and some of its employes had established a
relief fund under regulations requiring the members to contribute
certain sums out of their wages, and requiring the company to take
charge of the fund, to manage it at its own expense, and out of it to
make payment of certain specified benefits to sick or injured members,
or in case of the death of a member, to a beneficiary named by him;
and in case the fund was insufficient to make such payments, to supply
the deficiency; and that plaintiff had become a member, and in his
application had agreed that the acceptance of benefits from the fund
for injury or death should operate as a release of all claims for dam-
ages against the company arising from such injury or death, and that
after the injury for which the action was brought plaintiff accepted
such benefits. The trial judge, on motion in behalf of the plaintiff,
overruled and excluded this evidence. *Held*, error, because the trans-
action created a contract between the company and its employe which
was not against public policy nor lacking in mutuality or considera-
tion, nor beyond the power of the company to make; nor was it an
insurance contract within the meaning of our Insurance law. It
therefore furnished a complete defence to the action.

On error to the Supreme Court.

The action was in tort for the recovery of damages for
injury received by Beck, defendant in error, while in the
employ of the company, plaintiff in error.

In its defence the company proved the establishment by it
and some of its employes of a relief department, and put in
evidence the regulations governing the same, the pertinent
parts of which are as follows:

"1. The relief department is a department of the com-
pany's servants, in the executive charge of a superintendent,

whose directions in carrying out its regulations are to be complied with, subject to the control of the general manager.

\*     \*     \*     \*     \*     \*     \*

" 3. The object of this department is the establishment and management of a fund to be known as the relief fund, for the payment of definite amounts to employes contributing to the fund, who, under the regulations, shall be entitled thereto when they are disabled by accidents or sickness, and in the event of their death, to the relatives or other beneficiaries specified in the applications of such employes.

" 4. The relief fund from which the proposed benefits are to be paid will be formed by the voluntary contributions from employes, appropriations (when necessary to make up any deficit) by the company, and income or profit derived from the investment of the moneys of the fund and such gifts or legacies as may be made to the company for the use of the fund.

" 5. The company will take general charge of the department, guarantee the fulfillment of the obligations assumed by it, in conformity with the regulations from time to time established, take charge of the funds and be responsible for their safe-keeping, supply the necessary facilities for conducting the business of the department, and pay all the operating expenses thereof.

\*     \*   .   \*     \*     \*     \*     \*

" 10.   \*   \*   \*   If, during the period prior to the 1st day of January, 1889, or during any one of the successive periods of three years thereafter, the amount contributed by the members of the fund and received from other sources should not be sufficient to meet the liabilities incurred for such period, the company will pay the deficiency.   \*   \*   \*

\*     \*     \*     \*     \*     \*     \*

" 14. Those participating in the benefits of the relief fund must be employes of the company, and will be known as members of the relief fund.

\*     \*     \*     \*     \*     \*     \*

"17. No employe will be required to become a member of the relief fund.

\*     \*     \*     \*     \*     \*     \*

"19. Members of the relief fund may withdraw from the same on giving notice prior to the twenty-fifth day of any month, on a printed form provided for the purpose.

\*     \*     \*     \*     \*     \*     \*

"22. Participation in the benefits of the relief fund must be based upon an application by the proposed member.

\*     \*     \*     \*     \*     \*     \*

"58. Should a member or his legal representative bring suit against the company for damages on account of injury or death of such member, payment of the benefits from the relief fund on account of the same shall not be made until such suit is discontinued. If prosecuted to judgment or compromise, any payment of the judgment or amount in compromise shall preclude any claim upon the relief fund for such injury or death."

The regulations contained a form of application for membership in the relief fund.

The company also put in evidence an application for membership made by Beck, the pertinent parts of which application are as follows:

" I, Henry C. Beck, of Jersey City, in the county of Hudson and State of New Jersey, employed in the service of the Pennsylvania Railroad Company as brakeman upon the N. Y. Division Ct. Dept., do hereby, by reason of such employment, apply for membership in the relief fund, and consent and agree to be bound by the regulations of the relief department of the said company. \*   \*   \*

" I also agree that the said company, by its proper agents and in the manner provided in said regulations, shall apply as a voluntary contribution from any wages earned by me under said employment or for the benefits that may hereafter become payable to me, at the rate of seventy-five cents per month, for the purpose of securing the benefit provided for

in the regulations for a member of the relief fund of the first class. Death benefits shall be payable to my wife, Annie. * * *

"And I agree that the acceptance of benefits from the said relief fund for injury or death shall operate as a release of all claims for damages against said company arising from such injury or death which could be made by or through me, and that I or my legal representatives will execute such further instrument as may be necessary formally to evidence such acquittance.

" I also agree that this application, when approved by the superintendent of the relief department, shall make me a member of the relief fund and constitute a contract between myself and the said company, and that the terms of this application and the regulations of said department shall, during my membership, be a part of the conditions of my employment by the company."

It was also proved that the application of Beck had been approved according to the regulations, and that after the injury received by Beck he accepted benefits in accordance with the regulations from September 12th, 1897, the date of his injury, to May 8th, 1898.

This evidence was admitted under objection. At the close of defendant's case counsel for the company moved that a verdict be directed for it on the ground that the proof established a release or discharge of any liability of the company to Beck. This motion was denied, and the trial judge, on motion of Beck's counsel, overruled and struck out all the above-stated evidence. To these rulings the company took exceptions, which were duly allowed.

The case was submitted to the jury only upon the question whether the company was liable for Beck's injury because of a breach of its duty as master to him as employe.

For the plaintiff in error, *James B. Vredenburgh.*

For the defendant in error, *William H. Speer, Jr.*

The opinion of the court was delivered by

MAGIE, CHIEF JUSTICE.    The argument before us has been mainly directed to the assignments of errors based on the rulings of the trial judge indicated in the statement prefacing this opinion.

The bills of exception show that the rulings in question were made by the learned judge because he deemed the contract between the company and an employe, member of the relief fund, to be void, as opposed to public policy.

In the argument here the rulings are supported on that ground and also upon the further grounds that the contract lacks consideration ; that it is void for want of mutuality ; that it is *ultra vires* the corporation and is forbidden by law.

If the transaction between Beck and the company included an enforceable contract on its part that in case of an injury to him for which the company would be liable acceptance of the benefits from the relief fund for such injury should operate as a release of all claims against the company for damages therefor, it is obvious that it was erroneous to exclude the evidence of the contract and of the acceptance of benefits in this case and to submit to the jury the liability of the company for damages which such acceptance operated to discharge.    This leads to the consideration of the transaction to discover if a contractual relation between the parties was established, and what contract, if any, arose thereon, and whether it is open to the objections urged against its validity.

That a contractual relation arose out of the transaction is not, in my judgment, open to debate.    When the company established a department, with managers and officers paid by it, to gather a relief fund, partly from contributions from such of its employes as might become members, and promulgated regulations for the conduct of such fund and the relief to be given therefrom to every sick and injured member, it became bound to each member as he was admitted to administer the fund according to the stipulations of the regulations, and if it should prove to be insufficient to furnish the agreed-on relief, to appropriate thereto of its own money so much as would be

necessary to make up any deficit.   Every admitted member contracted with the company on his part to contribute his agreed-on share to the relief fund out of his wages, and in other respects to obey the regulations of the department. Such a contract would be implied from his seeking and obtaining admission as a member, but it is expressly set out in the written application for membership.   This contract, moreover, is not one made between persons theretofore strangers to each other, but one between persons already having contractual relations as employer and employe, and it deals in part with so much of the wages arising from the contract of employment as the members voluntarily contribute to the fund, which, with other money contributed thereto when necessary, the employer is to administer in relief of sick and injured members, and the beneficiaries of such as die.   The new contract is a part of the contract of employment, as the application declares it to be.

The learned trial judge held the contract between the parties to this action to be opposed to public policy, because he construed it to be a contract by the employe to relieve the employer of its liability to answer for injuries occasioned by its neglect of duty to the employe, and a stipulation on the part of the employe not to hold the employer liable in any event for such injuries.   If such is the true construction of the contract, I should not hesitate to assent to the view that it was invalid, for the law will not tolerate a contract between parties by which one agrees that the other may commit a tort to his injury with impunity and without liability to answer for damages.   Such a contract would be opposed to public policy.

But in my judgment such is not the correct construction of the contract now under consideration.   Reading the regulations and the application together, and particularly the provisions for the payment of benefits from the fund in any case of sickness, injury or death of a member, the provisions of section 58, respecting the withholding of such benefits in case of an action against the company for injury or death of a

member, and the agreement of the applicant that acceptance of the benefits for injury or death shall operate as a release of claims for damages arising from such injury or death, I think it plainly apparent that the employe, or his representatives, are not debarred by this contract from maintaining such an action, but there is an option afforded thereby, either to seek redress by action or to accept the benefits stipulated for from the fund.    The exclusion of the right of action can only arise by the acceptance by the employe of the optional rights to benefits.    I can perceive no reason why such a contract may not be made and find in it no opposition to the policy of the law.

What has been said respecting the contract in question disposes also of the objection that it was without consideration or lacking in mutuality.    Each of the contracting parties became bound to the other.    The contract of each was a legal and sufficient consideration for the contract of the other, and thereby each was ·mutually·bound.    In respect to the objections to the contract thus far considered, it is not to be overlooked that the benefits of the relief fund are not confined to cases where the company would be liable for the injury or death of the member.    Benefits are payable to sick members, to members injured and the beneficiaries of such as are killed under circumstances casting a liability upon the employer, and also to members injured, or the beneficiaries of such as are killed, when the injury or death has happened from the hazards of a dangerous employment or the negligence of a co-servant, for which no liability of the company could be claimed.

But it is further contended that this contract on the part of the company is *ultra vires.*

This objection could be properly disposed of by pointing out that the company in question is not a corporation of this state of whose corporate powers we may take judicial notice, but a corporation of the State of Pennsylvania.    Its charter, conferring such corporate powers as it possesses, has not been put in evidence.    We are therefore not in a position to say

that the company did not acquire thereby the power to make such a contract as appears in the case. The objection might also be met by the fact disclosed in the case that Beck has accepted the benefits arising under the contract and yet retains what he received thereby.

But I am not inclined to dispose of this objection upon either of these grounds. I will assume that the company was created to build, maintain and operate a railroad in the State of Pennsylvania, and obtained corporate powers sufficient to enable it to carry out that purpose. We know that it has acquired power in our own state to lease and operate railroads in extension of its system. Upon such assumption and knowledge we must recognize that it has either express or implied power to engage the services of many men, and contract with them as to the compensation they shall receive for their services. Each of such employes is engaged in an employment which subjects him to the hazard of injury and the danger of death. Each is possessed of the liberty to contract with the employer respecting his compensation. A contract by which an employe permits such an employer to create a fund in part out of his wages, supplemented by a contribution by the employer when necessary, out of which relief for sick and injured employes is provided, and by which the employer undertakes to manage the fund and furnish the agreed-on relief, is, in my judgment, within the implied powers of the employer, if a corporation. On the part of the employer such a scheme may be deemed likely to increase the efficiency of the force it employs, and on the part of the employe it may tend to relieve from anxiety as to support if injured by any of the many dangers to which he is daily and hourly exposed. As incidental to the contract of employment and compensation, therefore, it is not *ultra vires*.

The contract which is under consideration, and other contracts of similar terms, have been sustained against similar objections upon grounds substantially like those above expressed. This has been done in the federal courts. *Owens* v. *Baltimore and Ohio Railroad Co.*, 35 *Fed. Rep.* 715;

*Black* v. *Baltimore and Ohio Railroad Co.*, 36 *Id.* 655; *Otis* v. *Pennsylvania Railroad Co.*, 71 *Id.* 136; *Vickers* v. *Chicago, Burlington and Quincy Railroad Co.*, *Id.* 139; in Maryland, *Fuller* v. *Baltimore and Ohio Railroad Co.*, 67 *Md.* 433; in Pennsylvania, *Johnson* v. *Railroad Co.*, 163 *Pa. St.* 127; *Ringle* v. *Pennsylvania Railroad Co.*, 164 *Id.* 529; in Iowa, *Donald* v. *Chicago, Burlington and Quincy Railroad Co.*, 61 *N. W. Rep.* 971; in Indiana, *Lease* v. *Pennsylvania Co.*, 10 *Ind. App.* 47; *Pittsburg, Cincinnati, Chicago and St. Louis Railroad Co.* v. *Moore*, 53 *N. E. Rep.* 290; in Illinois, *Eckman* v. *Chicago, Burlington and Quincy Railroad Co.*, 48 *Id.* 496; in Nebraska, *Chicago, Burlington and Quincy Railroad Co.* v. *Bell*, 44 *Neb.* 44; and in Ohio, *Railway Co.* v. *Cox*, 55 *Ohio St.* 497.

The contrary view expressed in Indiana in *Railway Co.* v. *Montgomery*, 49 *N. E. Rep.* 582, was expressly disapproved in *Pittsburg, Cincinnati, Chicago and St. Louis Railroad Co.* v. *Moore*, *ubi supra*. A similar view expressed by a federal court, in *Miller* v. *Railway Co.*, 65 *Fed. Rep.* 305, was spoken of with disapproval in *Vickers* v. *Chicago, Burlington and Quincy Railroad Co.*, *ubi supra*, by the United States Circuit Court of Appeals, when the the case was before it on appeal, 76 *Fed. Rep.*

One question remains to be considered, and that is whether the contract which has been found to have been made between the parties is one prohibited by the provisions of our legislation on the subject of insurance. The contention of defendant in error is that by our laws no contract to indemnify any person against loss by casualty to property or health or life can be made by any corporation except one incorporated for that purpose under our laws, or a corporation of a foreign state formed for that purpose which has complied with our laws and obtained authority to transact its business in this state.

If it be conceded that this contention properly exhibits the scope of our laws on this subject I do not think it effective in respect to the contract now under consideration, because, in

my judgment, such a contract is not one of insurance within the meaning of those laws.

The purpose of the legislation appealed to is to regulate the business of insurance of various kinds by corporations who propose to do such business and who hold themselves out as ready to contract for insurance with any person who applies and agrees to the terms on which they offer to insure. If it be conceded that such business is a proper subject of legislative regulation, it is obvious that such regulations are not to be extended beyond the business intended to be regulated. The scheme of the relief department of this company does not contemplate a business of that sort. It is limited to such of the employes of the company as voluntarily apply for admission to the fund and are admitted. They agree with each other and with the company to contribute a portion of their wages to create a fund out of which they shall be paid certain sums in case of sickness or injury, and out of which, in case of death, certain sums shall be paid to the beneficiaries or next of kin. The sum so paid may save from want, but does not increase the estate of the employe. *Golden Star Fraternity* v. *Martin,* 30 *Vroom* 207.

I can perceive no reason why the establishment of such a fund and the agreement of those who contribute to it as to its distribution can be held to fall within the regulations of the insurance laws. Such an association creates its own fund by voluntary action and distributes it by an agreed-upon plan, and the contract between them is not of insurance but of beneficial relief. As they have neither sought nor obtained corporate powers for their purpose, they are not amenable to prohibitions against the use of corporate powers for that purpose, if any such exists.

The contract of the company with the members of the relief fund to take charge of the fund, to administer it at its own expense and to guarantee that it shall be sufficient to furnish the agreed-on relief, is also, in my judgment, not one of insurance within the laws appealed to. A contract of similar import with a railway company which had established

what was called a railway insurance society, was held by the Court of Queen's Bench to be a labor contract between employer and employe.    *Clements* v. *L. & N. W. Railway Co.*, 2 *Q. B.* 482 (1894).    The contract before us is the contract of an employer with an employe respecting the compensation the latter shall receive for his labor, and the manner in which it shall be accounted for and paid for his relief or the benefit of his beneficiaries.    The payment by the company of the expenses of management and of contributions, to make up deficiencies is in the nature of additional compensation for labor to those of its employes who enter into this contractual relation with it.

None of the objections to the contract being found to affect its validity, it results that it was erroneous to overrule the evidence of its existence, and its performance on the part of the company, and of the acceptance by Beck of benefits thereunder.    Under that evidence the defence of the company was perfect, unless it was met by counter-evidence denying the existence of the contract or the acceptance of the benefits by Beck.

The judgment must therefore be reversed.    This conclusion renders unnecessary any consideration of the other questions argued.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, COLLINS, DIXON, GARRISON, GUMMERE, VAN SYCKEL, ADAMS, BOGERT, HENDRICKSON, NIXON, VREDENBURGH.    12.