RICHARD DODD, RESPONDENT, v. CENTRAL RAILROAD
COMPANY OF NEW JERSEY, APPELLANT.

Argued February 16, 1910—Decided June 13, 1910.

A porter in the employ of an express company, handling express
matter at the terminal of a railway company, contracted in
writing with his employer to assume the risk of all accidents and
injuries that he might sustain in the course of his employment,
whether occasioned by negligence and whether resulting in his
death or otherwise; to hold the express company harmless from
claims on the part of himself or his representatives; and to re-
lease the corporation owning any transportation line on which
he might be injured, and he ratified all agreements made by his
employer with any transportation line, in which it agreed in sub-
stance that its employes should have no right of action for in-
juries sustained in the course of their employment, and he agreed
to be bound by such agreements in that respect, as fully as if
he were a party thereto. *Held*—
(1) That the effect of this contract was to exempt the express
company and the transportation company from liability for in-
juries incident to the employment, including those resulting from
negligence, but excluding such injuries as might result from acts
not in the course of the employment, and from willful acts of
the defendants.
(2) That the contract was not void as against public policy.

On appeal from the First District Court of Jersey City.

Before Justices GARRISON, SWAYZE and PARKER.

For the respondent, *Merritt Lane.*

For the appellant, *John M. Enright.*

The opinion of the court was delivered by

SWAYZE, J.   The plaintiff was employed as a porter by
the United States Express Company.   His duties were to
handle freight, unload cars and assort freight at the Com-
munipaw terminal of the Central Railroad Company.   He
was unloading a box car which was next to a platform.   There

was a plank extending from the car to another car on an adjoining track. A train backed down on this adjoining track and struck the car, which caused the plank to shift; it caught the plaintiff's foot and he was injured. The defence interposed grew out of two contracts, one between the express company, the plaintiff's employer, and the railroad company, the defendant, and the other between the plaintiff himself and the express company. By the contract with the railroad company the express company agreed to assume all risks of injuries to person or property, and injuries resulting in the death of any employes exclusively in its service, while upon the trains, ferryboats or premises of the railroad company, and to indemnify and save harmless the railroad company from all claims, loss, damage and expense that might be incurred by reason of injuries to person or property or death of any such employe. By the contract between the plaintiff and the express company, the plaintiff agreed as follows: "I understand that I may be required to render service for the company on or about the railroad, stage and steamboat lines used by the company for forwarding property, and that such employment is hazardous. I assume risk of all accidents and injuries that I may sustain in the course of my employment, whether occasioned by negligence and whether resulting in my death or otherwise. I agree to hold the company harmless from any and all claims that may be made against it, arising out of any claim or recovery on the part of myself or my representatives, for damages sustained by reason of my injury or death, whether such injury or death result from negligence or otherwise. I agree to pay to the company on demand any sum which it may be compelled to pay in consequence of any such claim. I will execute and deliver to the corporation or persons owning or operating the transportation line upon which I may be so injured, a good and sufficient release under my hand and seal of all claims, demands and causes of action arising out of any such injury, or connected with, or resulting therefrom. I ratify all agreements made by the company with any transportation line in which the company has agreed or may

agree in substance that its employes shall have no cause of action for injuries sustained in the course of their employment upon the line of such contracting party, and I agree to be bound by each and every such agreement, so far as the provisions thereof relative to injuries sustained by employes of the company are concerned, as fully as if I were a party thereto. The provisions of this agreement shall be held to enure to the benefit of any and every corporation and person upon whose transportation line the company shall forward merchandise, as fully and completely as if made directly with such corporation or person."

The evident intent of these two contracts was to exempt the railroad company from responsibility to the plaintiff for all accidents and injuries which he might sustain in the course of his employment, whether occasioned by negligence or not, and whether the result was merely a personal injury or death. The words "or otherwise," standing in collocation in the same clause with the words "whether resulting in my death," evidently refer to the result, and not to the occasion of the injuries. The importance of this construction arises from the fact that if the words "or otherwise" apply to the occasion of the injury, the contract is broad enough to exempt the corporation from willful acts, and such a construction would subject the contract to the criticism that it is an agreement that the corporation might commit a tort, to the injury of the plaintiff, with impunity and without liability to answer in damages; a character of contract condemned by what was said by Chief Justice Magie, in *Beck* v. *Pennsylvania Railroad Co., 34 Vroom* 232 (at *p.* 237). We ought, if the terms of the contract permit, to adopt a construction which will validate it, in accordance with the intention of the parties, rather than a construction which will make it invalid; and in this case such a construction is the more natural one. By the contract the plaintiff assumes the risk of accidents and injuries sustained in the course of his employment, and this assumption of risk is evidently meant to include only the risk of such injuries as may be incident to the employment, excluding such injuries as are the result of

acts not in the course of the employment. In view of the well-known state of the law and the familiar legal expressions used in this contract, it is perhaps safe to say that its object was to put upon the plaintiff the same risks which a servant of the railroad company would assume by the mere contract of employment under the existing law, and, in addition, to put upon him the risk of injuries resulting from negligence of either company, which, apart from the contract, he would not be held to have assumed. The question which arises is whether a contract of that kind is contrary to public policy, as the learned judge of the District Court held, or whether, like other contracts, it ought to be enforced as the parties intended. This question is to be solved in view of the existing state of the law without regard to the changes, which perhaps now are generally considered desirable changes, introduced by statutes in other jurisdictions. We have no statute forbidding a contract by which the employe agrees to exempt his employer from liability.

In support of the judgment it is argued that the case comes within the rule announced by Chief Justice Magie in the Beck case. That remark was unnecessary to the decision of the case, which was decided in favor of the railroad company upon another ground, but we are not inclined to question its correctness. The exact language is: "The law will not tolerate a contract between parties by which one agrees that the other may commit a tort to his injury, with impunity and without liability to answer for damages. Such a contract would be opposed to public policy." In applying this rule it becomes important to determine what is a tort. In one sense, any wrong is a tort, but whether or not the wrong is actionable as a tort, depends upon circumstances. An assault and battery is, generally speaking, an actionable wrong, but if two men in sport, by mutual consent, box with gloves, the blows inflicted, although ordinarily they would constitute actionable assault and battery, are not the subject of an action. A surgeon may cut into the vital parts without liability to a lawsuit, although his act may result in the death of the patient. The illustrations suggest acts of com-

mission. When it comes to acts of omission, that is, of negligence, the question whether an act is or is not actionable likewise depends upon circumstances, the most important of which is the existence or non-existence of a duty on the part of the defendant to the plaintiff to exercise care; for instance, an omission which would be actionable in the case of a person invited to come upon premises occupied by the defendant, would not be actionable in the case of a trespasser, or a mere licensee. The immunity of the defendant in the case of trespassers is sufficiently illustrated in the turntable cases, and in the case of *Friedman* v. *Snare & Triest Co.*, 42 *Vroom* 605, and the difference between the liability to one who has been invited to come upon premises, and a mere licensee is sufficiently dealt with in the leading case of *Phillips* v. *Library Company*, 26 *Id.* 307.

In the present case the plaintiff was in the employ of the express company, which was using the premises of the railroad company for their mutual benefit. He was therefore entitled to all the rights which arise out of the invitation and he was entitled to no more. He was not like the express messenger in *Baltimore and Ohio Railroad Co.* v. *Voigt*, 176 *U. S.* 498, and in the cases cited therein, actually traveling upon the railroad, and it cannot be contended therefore, as it was in those cases, that the relation between the plaintiff and the railroad company was that of a passenger and common carrier. Although the plaintiff was upon the premises by invitation, his rights depended upon the extent of the invitation, and that is to be ascertained from the contract between the railroad company and the express company. It is clear from that contract that the invitation to the express company was conditional upon the exemption of the railroad company from liability to the employes of the express company. That the rights of a person invited upon premises extend no further than the invitation is shown, not only by *Phillips* v. *Library Company*, *supra*, but by *Furey* v. *New York Central Railroad Co.*, 38 *Vroom* 270, and *Ryerson* v. *Bathgate*, 38 *Id.* 337.

It can hardly be questioned that an occupier of land may ordinarily exclude all persons therefrom, or may admit them

upon such terms as he chooses. An exception exists in the case of common carriers, who are bound to carry persons and property for all who come, and are bound therefore to afford the necessary access to their premises upon reasonable terms, but this is an obligation only in favor of passengers or shippers of freight or others in a similar position. It is not even applicable in favor of an express company, which cannot insist upon the railroad company affording access to its premises, or transporting express matter. *Express Cases,* 117 *U. S.* 1. Since the rights of an express company are not the rights against a common carrier, as such, but are necessarily the result of private contract, the rights of the plaintiff can rise no higher, and they, too, are limited by the terms of the contract between the express company and the railroad company, to which the plaintiff expressly assented, and since his right to be upon the premises depended upon his contract with the express company, it is limited by the terms of that contract also. The result of this view is that the act of the railroad company's servants in backing the cars upon the track adjoining that on which the plaintiff was, even although it was negligent, was not actionable in favor of the plaintiff. It was not a tort, and the remark made in the Beck case and quoted above, is therefore not applicable.

There are other considerations which lead us to the conclusion that the contract was not against public policy. The risks assumed by the plaintiff were those of accidents and injuries sustained in the course of his employment, and, as we have said, not willful acts of the company. So far as he assumed the ordinary risks attendant upon the hazardous character of the place in which he was employed, he did no more than every servant is held, wisely or not, to have done by implication of law. So far as he assumed the risks of injuries occasioned by negligence, these, if not the willful act of the railroad company, would necessarily be the acts of its servants, and the effect of the contract was to exempt the railroad company from the applicability of the rule of *respondeat superior,* by which the law makes it responsible for the acts of others. The contract does not evince an inten-

tion to waive all claims for injuries, by whomsoever committed. It goes no further than to exempt the corporations from liability for the acts of third persons, and the plaintiff still has redress against the persons who were actually guilty of negligence.

The view that we take is thoroughly supported by the authorities. In fact the cases cited are much stronger in favor of the plaintiff than the present case, since they involved the construction of similar contracts made by express messengers who traveled as passengers upon the trains, or by those who traveled free under special contracts. It is only necessary to refer to *Baltimore and Ohio Railroad Co.* v. *Voigt, supra;* *Bates* v. *Old Colony Railroad Co.,* 147 *Mass.* 255; *Robertson* v. *Old Colony Railroad Co.,* 156 *Id.* 525; *Louisville, N. A. & C. Railway Co.* v. *Keefer,* 146 *Ind.* 21; *Pittsburgh, C., C. & St. Louis Railroad Co.* v. *Mahoney,* 148 *Id.* 196; *Northern Pacific Railway Co.* v. *Adams,* 192 *U. S.* 440.

The case was decided by the trial judge without finding whether or not in fact the railroad company was guilty of negligence, and although the stress of the argument in this court has been upon the questions already discussed, the appellant, in his brief, makes the point that there was no proof of negligence. We think that he is right in this view. We find nothing in the evidence to charge the railroad company with knowledge that a plank extended from the car on one track to the car on the other track, and that there was any liability of injury to the employes of the express company by the backing down of the cars. The case in this respect resembles *Prosser* v. *West Jersey and Seashore Railroad Co.,* 46 *Vroom* 614, and *Ackley* v. *West Jersey and Seashore Railroad Co.,* 47 *Id.* 741.

The judgment must be reversed, and the record remitted for a new trial.