The plaintiff was injured while riding on defendant's railroad train as the result of a collision between that train and the train of another railroad company because of the negligence of defendant's servants. The appeal is from a judgment upon a verdict rendered by a jury against the defendant for the resultant damages. The plaintiff was a driver of an express wagon in Jersey City belonging to the American Railway Express Company, which was his employer, and at the time of the accident he was riding from his home at Carlstadt on the defendant's train to Jersey City in order to go to work on his express wagon. His work had nothing to do with the operation of defendant's railroad, nor with any service of his employer, the American Railway Express Company, on such railroad. For some reason not made clear by the testimony, the plaintiff regularly each month made requisition to the American Railway Express Company, as one of its employes, for an order on the defendant company entitling the plaintiff to receive a commutation ticket from Carlstadt to New York City upon payment of one-half of the regular commutation fare for such ticket. This procedure had gone on for several years, and at the beginning of the month in question the plaintiff received such an order, presented it to the defendant railroad company, paid one-half the regular commutation fare, and received a pass or half-fare ticket, the back of which contained a release of all damages which might be suffered by the plaintiff as the result of the negligence of defendant's servants while the plaintiff was traveling on defendant's railroad upon such half-fare ticket or pass.
The learned trial judge held the release to be void as *Page 624 
against public policy, and the correctness of this ruling is the one question raised by this appeal.
It is well established in this state that a passenger "not for hire" (namely, riding on a "free pass") is bound by a contract or condition, to which he is party, releasing a common carrier from liability for injury resulting from negligence. Kenney et al.
v. Central Railroad Co. of New Jersey, 32 N.J.L. 407;affirmed in 34 Id. 513. As was said by Chief Justice Beasley, speaking for the Supreme Court in that case, "I do not regard the contract now in controversy as one which the defendants have made in their character of common carriers. I think it plain they must, in this respect, be placed on the foot of gratuitous bailees. Every test which can be applied to the case will show that the defendants on this occasion, in this particular matter, were not common carriers. The deceased did not bargain with them on the basis of any such employment. If he had seen fit, he had a right to deal with them in their general character, but he did not do so. As a member of society, it was his right, upon paying his fare, to require of these defendants to carry him upon the terms which the law imposed upon them, but, instead of exacting this right, he solicited a mere benevolence, the discharge of which it would not be reasonable to consider as any part of the business of the carrier. The legal existence of this contract, therefore, cannot be impugned on the ground so often advanced where common carriers are concerned — that it is unwise to permit those public employes to throw off any given part of their common law liability. The question ventilated must be settled by such rules of law as are applicable to the ordinary class of gratuitous bailments, or of persons rendering an unbought courtesy."
This reasoning seems to have been approved by Chief Justice Magie, speaking for the Supreme Court, in Trenton PassengerRailway Co. v. Guarantors Liability Indemnity Co., 60 N.J.L. 246.
On the other hand, "It is settled with practical uniformity of decisions that a common carrier of passengers cannot, by antecedent contract or release, exempt itself from liability to *Page 625 
a passenger for hire, for its own negligence, or that of its servants, no matter in what way the hire or compensation has been paid or is to be paid." Buckley v. Bangor, c., Railroad Co.,113 Me. 164; 93 Atl. Rep. 65; 10 Corp. Jur. 716, note — citing many cases, among which are New York Central RailroadCo. v. Lockwood, 84 U.S. 357, where Mr. Justice Bradley, speaking for the United States Supreme Court, states that a common carrier cannot lawfully stipulate for exemption from responsibility when such exemption is not just and reasonable in the eye of the law, and that it is not just and reasonable for a common carrier to stipulate for exemption from responsibility for the negligence of himself or his servants in the case of a passenger carried for hire; and Norfolk Southern Railroad Co.
v. Chatman, 244 U.S. 276, in which it was held that a person traveling by railroad as a caretaker of live stock on a drover's pass is a passenger for hire, as to whom a stipulation that the carrier shall not be liable for personal injuries caused by its negligence, is void.
The reason for the doctrine of these latter cases would seem to me to be that as a common carrier is a quasi-public agency enjoying a franchise, and generally a monopoly, to serve the public for, and in consideration of, the carrier's own profit, the latter, as a matter of public policy, will not be permitted, while receiving the profit, to escape the service. One of the elements of that service in the case of a common carrier of passengers for hire, is that it and its servants shall use a high degree of care for the safety of the passengers. The public, which grants the profit-privilege, is naturally interested in the performance of the reciprocal service. It is therefore a matter of true public policy which renders void any attempt to contract out of existence the right of the traveling public to have its safety properly conserved at the hands of those instrumentalities which, in consideration of such conservation, it has created and authorized to serve it and to take toll for so doing.
Obviously, servants of such a carrier or of allied utilities operating on the carrier's trains and helping render a part *Page 626 
of the public service carried on thereon, while traveling upon the carrier's cars in the performance of the carrier's public duties, do not fall within the classification of the general traveling public in whose rights the public has a jealous interest. Naturally they occupy a special position with relation to the carrier, and, in the absence of proper legislative regulations, may contract with it as they see fit. Dodd v.Central Railroad Co. of New Jersey, 80 N.J.L. 56; affirmed,82 Id. 524. This distinction was properly recognized by the learned trial judge (Judge Ackerson, formerly a judge in this court) who tried the case now before us at the Circuit, and who called attention to the fact that "while the plaintiff worked for an express company, nevertheless, he had no duties pertaining to the operation of or in connection with the defendant's railroad."
The question here involved, therefore, seems to resolve itself into the simple one — if a person who rides upon a free pass which he receives as a pure gratuity can lawfully contract away his passenger rights to damages suffered because of injuries arising from the negligence of the servants of the common carrier, and if a regular passenger paying full regular fare cannot so contract, how about one who rides upon a pass issued for one-half, or any other fractional part of the regular fare? For the reasons hereinbefore pointed out, we think that a release by such a partial-fare passenger is just as much against public policy, and consequently void, as is such a release by a full-fare passenger. Each of them falls within that class of passengers which the carrier, because of the fundamental essence of its franchises or privilege to take toll from them, and the exercise of that privilege, has become bound as a public duty to carry them with a high degree of care. Morris v. West Jerseyand Seashore Railroad Co., 87 N.J.L. 579, does not run counter to this view because in that case the Hepburn act was held, following Charleston, c., Railway Co. v. Thompson,234 U.S. 576, to conclusively establish the fact that the pass there under consideration was a "free pass."
The judgment is affirmed. *Page 627 
 For affirmance — THE CHANCELLOR, CHIEF JUSTICE, TRENCHARD, PARKER, MINTURN, KALISCH, BLACK, KATZENBACH, CAMPBELL, LLOYD, WHITE, VAN BUSKIRK, McGLENNON, KAYS, HETFIELD, DEAR, JJ. 16.
For reversal — None.