SASSAMAN v. PENNSYLVANIA R. CO.

Civ. No. 1168.

District Court, D. New Jersey.

April 9, 1943.

Emanuel Kohn, of Newark, N. J., for plaintiff.

Wall, Haight, Carey & Hartpence, John A. Hartpence, and James R. Laird, Jr., all of Jersey City, for defendant.

FAKE, District Judge.

This is a negligence suit. The parties waived a jury trial. Jurisdiction is based on diversity of citizenship and the requisite statutory amount.

I find the facts as follows: Plaintiff had been in the employ of defendant for upwards of forty-one years. On August 8, 1939 he was employed as a train dispatcher in Jersey City, and finishing his work on that day he boarded a train operated by defendant, to return to his home at Newark. He resided a short distance from the South Street Station in that city and had commuted from that station to and from his work for many years. Usually when alighting from the train on his homeward journey, it was at a point some distance south of the point where he fell and sustained the injury complained of. Never before the above date had he landed on the platform at the point where he fell and he never had walked over it, so he had no exact knowledge of its surface. The platform was paved with brick and presented a wavy or uneven surface in some places and level in others. On the above date he rode in the rear coach of the train and the train stopped at a point about two car lengths north of its customary stopping place. A portion of the rear coach extended back beyond the platform and over the South Street bridge, the front steps thereof however gave exit to the platform. He left his seat, proceeded to the front platform of the coach and then down the steps holding fast by his left hand to the car handle. On reaching the lower step he put his right foot down to land on the station platform and immediately fell down on his side. The lower step under usual conditions was approximately two feet above the station platform, but at the point where he stepped down the platform was not level, there was a space of about one and a half to two feet in circumference where the platform had sunk in, leaving a depression or hole one and a half to two inches deep. This depression was not noticeable to the eye looking down on it from the steps and so there was a mental miscalculation of one and a half to two inches by plaintiff as to the level at which his right foot would meet the platform. This difference was the cause of his fall. Suffering severe pain he was assisted to his feet and made his way to the street where one Mildred Rubin helped him and she and her father took him to his home.

On reaching home plaintiff was treated by a physician, X-rays were taken and it was found that he suffered a "complete intra capsular fracture of the shaft of the femur with upper and mesial displacement. The fracture was through the neck of the femur. Subsequent X-rays showed that after treatment there was still upward and internal displacement with the fracture fairly well healed but with an appreciable shortening of approximately one half inch. It was further disclosed that sometime after his injury, he threw two embolisms, which were caused by the injury he had received, as a result of which, casts, which had been applied to both legs together with a turn buckle, which was an apparatus to pull the legs down, were removed. He remained in bed until October, at which time he was alternately between the bed and the wheel chair, and was under constant medical attention until approximately April 1940, or a period of eight months. He incurred necessary expenses of Fourteen Hundred and Fifteen Dollars and Ten Cents ($1415.10). In addition the plaintiff had not intended to retire for a period of time in excess of a year by reason of which he lost salary payments equivalent to the difference of One Hundred Eighty Four Dollars and Fifty Cents ($184.50) per month between his regular salary and the pension provided by the United States Government, or a total in one year of Twenty Two Hundred and Fourteen Dollars ($2214.00) together with a loss of an entire month's salary of Two Hundred and Ninety Seven Dollars ($297.-00). Medical testimony indicates that by reason of the fore shortening of the neck of the right femur and a rotation of the fracture site, which was mushroomed or impacted, and a loss of the function in his right knee joint, he is unable to walk without the aid of crutches. The old fracture of the knee joint had occurred about forty-five years prior and had not caused him any difficulty during the interim, but by reason of the shortening of the femur, created an instability. Plaintiff is permanently disabled in that he has a lateral inclination of his spine, a tilt of the neck of the pelvis and shortening of the neck of the femur, with medical displacement and he will always need artificial support and will always have considerable difficulty in locomotion."

"Although the plaintiff had occasion to be on the platform daily prior to the accident, he never had, to his knowledge, been at that particular spot where the accident occurred, and he had never seen this depression until he stepped on it. The defendant had failed to inspect or examine its platform since said platform had been built in 1918."

Plaintiff was in his sixty-ninth year at the time he was injured and his injuries have resulted in a seventy-five percent total disability.

The depression complained of as evidenced by its very nature, was occasioned by gradual processes of deterioration extending back over an appreciable period of time.

Plaintiff suffered an injury to his knee cap when fifteen years of age. It had given him no difficulty for fifty-five years and did not contribute to the injury complained of.

Plaintiff was not guilty of contributory negligence.

Plaintiff was riding on an employee's pass at the time and the pass contained the following clause:

### "Conditions.

"This pass is not transferable. If presented by a person not named therein, Conductor will take up the pass, and collect the proper fare. The user expressly assumes all risk of accidents, and of personal injury, and loss or damage to property, regardless of their causes, and absolves the Company from all liability therefor. As a condition to its issue, it is declared by the user that such user is not prohibited by law from receiving free transportation, and further that the pass will be lawfully used."

Plaintiff was not functioning within the scope of his employment when he was injured.

### Conclusions of Law.

1. There was a duty on the defendant to exercise reasonable care in maintaining a safe platform for passengers to alight upon. It was not safe because of the depression complained of and the peculiar nature of the depression charged defendant with notice of its existence. In this connection the case falls within the rule laid down in Stark v. Great Atlantic & Pacific Tea Co., 102 N.J.L. 694, 133 A. 172 and Ellis v. Rosenberg et al., 188 A. 499, 15 N.J.Misc. 37. Defendant is guilty of negligence.

2. As to the assumption of risk and the antecedent release involved in plaintiff's use of his employee's pass, no New Jersey cases have been cited nor has

independent research disclosed any. The nearest approach is found in Sheridan v. New Jersey & N. Y. R. Co., 104 N.J.L. 622, 141 A. 811, but it does not fully apply since the plaintiff there rode on a reduced rate ticket and was not in the employ of the defendant railroad. Corpus Juris Secundum, Volume 13, Carriers, 546, note 99, p. 1050 states the rule as follows: "Great weight of authority * * * is to the effect that when the employé, either by virtue of his contract of employment or under a rule or custom of his employer, is accorded the same means and privileges of transportation over the lines of his employer as an ordinary passenger for hire, then, while riding upon his employer's cars at a time when, under his contract of employment, he is neither under the control of his employer nor obliged to perform any service for him, he is to be regarded as a passenger, and that, under such circumstances, it is immaterial that the employé be either going to or coming from his place of work." Klinck v. Chicago City R. Co., 262 Ill. 280, 104 N.E. 669, 671, 52 L.R.A., N.S., [70] 76, Ann.Cas.1915B 177."

I adopt the foregoing as the rule of law to be followed in this case.

3. The plaintiff's damages are hereby assessed at $3,926.10, to cover his actual monetary losses and the sum of $12,000, for the damages he has sustained, making a total of $15,926.10, for which total a judgment will be entered in favor of the plaintiff and against the defendant with costs to be taxed.