## TRENTON PASSENGER RAILWAY COMPANY v. THE GUARANTORS LIABILITY INDEMNITY COMPANY.

A contract to indemnify a common carrier of passengers against losses occurring from injuries to passengers carried by it, is not invalid as against public policy because it covers losses resulting from its negligence or the negligence of its servants.

On case certified from Mercer Circuit.

The declaration in this case is founded upon a written contract whereby the Guarantors Liability Indemnity Company indemnifies the Trenton Passenger Railway Company against legal liability for injury to, or death of persons arising by reason of casualty occurring in, upon, about or by reason of the street railroad of the Trenton Passenger Railway Company or its equipment, to an amount not exceeding $5,000 for the injury to or death of any one employe; not to exceed $5,000 for the injury to or death of any person other than an employe, and not to exceed $20,000 in respect to any one casualty whereby several may be injured or killed. It further sets out various actions against the Trenton Passenger Railway Company for injuries which it claims fell within the contract of indemnity of the Guarantors Liability Indemnity Company, and that those actions had been prosecuted to judgment, but that the Guarantors Liability Indemnity Company, although requested, had not paid them in accordance with the terms of their contract.

The plea was the general issue.

The issued joined was tried by the court, a jury being waived.

The trial judge found that the Guarantors Liability Indemnity Company had made the contract declared upon, and that while such contract was in force two judgments were obtained against the Trenton Passenger Railway Company for casualties and injuries falling within the terms of that contract, which judgments the latter company had paid.

Thereupon the trial judge reserved for the determination of the Supreme Court the following question of law, namely, whether the said contract of indemnity is a valid contract or is void as against public policy as being a contract to indemnify the said The Trenton Passenger Railway Company (Consolidated) against losses resulting from its negligence or from the negligence of its agents and employes.

Argued at February Term, 1897, before MAGIE, CHIEF JUSTICE, and Justices DEPUE, VAN SYCKEL and LIPPINCOTT.

For the plaintiff, *Robert S. Woodruff* and *Carroll Robbins.*

The opinion of the court was delivered by

MAGIE, CHIEF JUSTICE. The question reserved in this case is one of great interest, and is presented for determination for the first time in this court.

The proof of the execution by the defendant company of the instrument on which the action is brought, which instrument contains plain stipulations for indemnifying the plaintiff company for losses arising from injuries done by it to its employes or the passengers carried by it, and the proof that such losses had occurred as were thus intended to be indemnified against, sufficiently established plaintiff's right to recover the stipulated indemnity unless the instrument is not in the eye of the law a valid contract.

It is obvious that the trial judge entertained doubts of the validity of the instrument in question, for although no objection appears to have been made on the part of the defendant upon that point, he has deemed it necessary to submit it for determination to the full bench. The attitude of the defendant at the trial has been maintained in this court, for its counsel has presented no argument and made no claim that the instrument is not a binding and enforceable contract. The result is that our examination of the question has not been aided by the researches of counsel maintaining its negative, but only of counsel supporting its affirmative. For this reason I have given the question as close an examination as time would permit lest something bearing thereon might be overlooked.

The proposition which one would assert who contested the validity of such a contract would obviously be this, namely, that a contract whereby a common carrier of passengers is to

be indemnified against damages which he was required to pay for personal injuries occasioned by his negligence or by the negligence of his agent, is contrary to public policy and therefore unenforceable.

It is admittedly difficult, if not impossible, to formulate a satisfactory statement of what is meant by the words "public policy." Mr. Justice Kekewich declared that it does not admit of definition and cannot be easily explained. *Davies* v. *Davies,* 36 *Ch. Div.* 359.

That the law has recognized one sort of public policy as a foundation for its judgment at one period, and another sort at another period, is undoubted. It is amusingly shown by Lord St. Leonards in *Egerton* v. *Brownlow,* 4 *H. L. Cas.* 1. Speaking of a case from the Year-Books, he says (at *p.* 238) : " It was on an obligation with a condition that if a man did not exercise his craft of a dyer within a certain town—that is, where he carried on his business—for six months, then the obligation was to be void, and it was averred that he had used his art there within the time limited ; upon which Mr. Justice Hull, being uncommonly angry at such a violation of all law, said, according to the book : '*Per Dieu,* if he were here, to prison he should go until he made fine to the king, because he had dared to restrain the liberty of a subject.' Angry as the learned judge was at that infraction of the law, what has been the result of that very rule without any statute intervening ? That the common law, as it is called, has adapted itself upon grounds of public policy to a totally different and limited rule that would guide us at this day, and the condition which was then so strongly denounced is just as good a condition now as any that was ever inserted in a contract, because a partial restraint created in that way with a particular object is now perfectly legal." Another illustration occurs with respect to the obligations imposed by law founded on public policy, on common carriers of goods. Originally they were insurers of the safety of the goods against every loss except such as occurred by the act of God or the public enemy,

and any contract relieving them of any part of that obligation was held to be void. Gradually they have been permitted to contract for exemption from some of their liability, and public policy seems now effective only to the extent of prohibiting their exemption by contract from any losses occurring by reason of their negligence and the negligence of their servants. For such losses the law founded on public policy still holds them bound. *Railroad Company* v. *Lockwood,* 17 *Wall.* 357; *Liverpool Steam Co.* v. *Phenix Insurance Co.,* 129 *U. S.* 397.

From these varying applications of the principle called public policy, I think it obvious that no accurate definition of that phrase can be devised in respect to any particular matter. In my judgment, the best that can be done is to say that since the law abhors conduct injurious to the public interest or antagonistic to the public good, the courts will decline to enforce contracts which at the time they are presented for consideration require or involve conduct against public interest and public good. Such is the result of my consideration of the matter after examining many cases which exhibit the variant views taken by courts upon this subject, which variance is no more strikingly indicated than in the case of Egerton v. Brownlow, before cited.

My researches have not been rewarded with the discovery of many expressions of judicial opinion or by many adjudications on the question reserved in this case. Obvious reasons exist why the judicial consideration of such a question would be infrequent. In actions upon contracts of indemnity such as that on which this action is founded, the insured raises no question as to the validity of the contract; the insurer, if as usual it is a company engaged in and seeking profit by making such contracts of insurance, is equally adverse to setting up or maintaining that the contracts by which its profits are made are in the eye of the law void.

Adjudications and judicial opinions upon a class of contracts which seem to me to bear a strict analogy to those contracts, one of which is before us, are not infrequent. As before stated, common carriers of goods may, by contract with

their employers, limit their liability for losses from all peril except those arising from their negligence or the negligence of their servants. When the liability is so limited, the common carrier of goods stands answerable only for his negligence and that of his servants. The common carrier of passengers has never been deemed an insurer of their safety during carriage, but the law has imposed upon him a duty to take the highest care for the safety of the passenger; he is therefore liable for injuries done to the passenger only where they result from his negligence—that is, the failure to take the care for the safety of the passenger which the law enjoins. Both classes of carriers are therefore liable under such circumstances upon precisely the same grounds; their liability arises from negligence, which is a failure to bestow the care and skill which the situation of the parties and the subject-matter require. The negligence which will render them respectively liable may possibly differ in degree, but (although the distinction between what has been called gross negligence and ordinary negligence is now generally and with great reason repudiated, *Railway Company* v. *Lockwood, ubi supra*), it is identical in kind.

The only reason which I find possible to conceive to be capable of being urged in support of the proposition that the contract before us in this cause is contrary to public policy, is that the indemnity thereby provided for a common carrier of passengers may tend to render him less careful in the performance of his duty to his passengers than he otherwise would be. It is obvious that such is not the purpose of the contract for indemnity. The insurer does not contemplate the relaxation of the carrier's vigilance which would tend to throw additional liability upon him. The insured is held to the performance of his duty of vigilance both by his liability, notwithstanding the indemnity, and by the fact that the vigilant carrier would obtain better terms in making the contracts of insurance.

It is further obvious that if a contract indemnifying the common carrier of passengers against liability arising from

his negligence tends to a relaxation of vigilance inimical to the public interest, so a contract indemnifying a common carrier of goods against the consequences of his negligence must have the same effect and be obnoxious to the rule avoiding contracts contrary to public policy. Yet it now seems well settled that a common carrier of goods may enforce contracts of insurance on goods carried against all losses, including those occasioned by his negligence or the negligence of his servants. In an action upon such a contract of insurance which came before the Supreme Court of the United States, Mr. Justice Gray thus dealt with the claim that such contracts were void. He said: "No rule of law or of public policy is violated by allowing the common carrier like any other person having either the general property or a peculiar interest in goods to have them insured against the usual perils, and to recover for any loss from such perils though occasioned by the negligence of his own servants. By obtaining insurance he does not diminish his own responsibility to the owners of the goods, but rather increases his means of meeting that responsibility. If it were true that a shipowner, obtaining insurance by general description upon his ship and the goods carried by her, could, in case of the loss of both ship and goods by perils insured against and through the negligence of the master and crew, recover of the insurers for the loss of the ship only and not for the loss of the goods, some trace of the distinction would be found in the books, but the learning and research of counsel have failed to furnish any such precedent." *Phœnix Insurance Co.* v. *Erie Transportation Co.*, 117 *U. S.* 312. The doctrine in that case was referred to with approval in *Orient Insurance Co.* v. *Adams*, 123 *U. S.* 67, and *Liverpool Steam Co.* v. *Phenix Insurance Co.*, 129 *U. S.* 397. Afterwards the court was urged to review the doctrine of Mr. Justice Gray and to declare that the insurance was an insurance against negligence and contrary to public policy and void, but the court speaking by Mr. Justice Blatchford reaffirmed the doctrine on the

grounds stated in the opinion of Mr Justice Gray. *California Insurance Co.* v. *Union Compress Co.,* 133 *U. S.* 387.

Various kinds of insurance against loss by fire or loss by perils of the sea would seem to be open to a like charge of a tendency to encourage negligence which, at least when the policies are held as they so frequently are as collateral security for obligations of the insured, may be well argued to be against the public interest, and therefore void as against public policy. But no trace of any such claim can be found in text-books or adjudications.

With respect to such contracts of insurance as that with which we are dealing, I have found but two expressions of judicial opinion in the books and reports. In the case of *Delanoy* v. *Robson,* 5 *Taunt.* 605, upon a motion to settle the venue it incidentally appeared that the action was upon a contract of somewhat such character and the reporter states a *quære* as to whether an insurance against damages that a shipowner might be liable to pay in consequence of his ship running down another, be not illegal, and it is said, *per curiam,* "it would be an illegal insurance to insure against what might be the consequence of the wrongful acts of the accused." This case affords no aid in the solution of the question both because the question was not directly presented but only incidentally considered, and because what the court said may well be deemed limited to acts of the insured which were actively wrongful in distinction from being merely negligent.

There is, however, an adjudication precisely in point in which the question thus arose: An incorporated company authorized, among other things, to issue contracts of indemnity of the same character as that before us, became insolvent; its business had not been confined to making such contracts, but had extended to other contracts of indemnity, and the court in distributing the assets had before it creditors whose claims arose from other forms of contracts than those arising upon such contracts of insurance. In behalf of the other creditors the court was urged to declare that the creditors who claimed upon such contracts of insurance should not be admitted to

partake in the distribution of the assets upon the ground that such contracts of insurance were obnoxious to public policy and unenforceable and void.    The opinion of the court was written by Chief Justice McSherry, and contains an admirable discussion of the question, reaching the conclusion that public policy does not avoid these contracts.    In respect to the claim that the possession of such indemnity tends to beget negligence, he says : "Nor can we assume as an unvarying rule, of which judicial notice will be taken, that a carrier of passengers, who has secured an indemnity to reimburse himself for losses which his own negligence may produce, will, merely because and solely in consequence of having such indemnity—which, at best, is but limited and partial—necessarily disregard the duty to exercise the highest degree of care.    And unless it be assumed as a postulate that the mere possession of an indemnity will, of itself, necessarily and invariably produce negligence, it does not logically follow that such a policy or indemnity is even incidentally or indirectly repugnant to public policy.    The indemnity in no way affects the liability of the carrier to the person injured.    The utmost that it does, precisely as in the case of a carrier of goods, is to afford him a fund out of which he may be reimbursed, and that, too, perhaps, but partially ; for in all these policies the liability of the insured is always limited and confined to a specifically-designated sum."    *Boston and Albany Railroad Co.* v. *Mercantile Trust and Deposit Co.,* 34 *Atl. Rep.* 778.

The result is that the reserved question must be answered in favor of the validity of the contract upon which this action is founded, and as the special finding of the trial judge shows that he had assessed the damages of the plaintiff at the sum of $978.36, judgment should be ordered entered for the plaintiff for that sum.

It is proper to observe that the decision of this court in *Kinney* v. *Central Railroad Co.,* 3 *Vroom* 407, and of the Court of Errors in the same case (5 *Id.* 513), are not at all antagonistic to the views above expressed.    It was held in both courts that where a common carrier of passengers agreed

to carry a passenger gratuitously, a valid contract might be made between the carrier and such a passenger, exempting the carrier from all liability even for injuries resulting from its negligence or the negligence of its servants. But this was distinctly put upon the ground that, in such case, the ordinary relation of a passenger and common carrier did not arise, but rather a relation, as the learned Chief Justice pointed out, analogous to that of a bailor and a gratuitous bailee. Assuming that it may be inferred from those decisions that when the ordinary relation of common carrier and passenger has arisen, a contract exempting the former from liability to the latter for injuries resulting from its negligence or the negligence of its servants would be invalid, it only results that the common carrier of passengers is left invariably liable for the consequences of its negligence precisely as is above shown the common carrier of goods is liable.