## Sherman, Appellant, *v.* Consolidated Dental Manufacturing Company.

*Master and servant—Manager to make sales—Sales on credit—Compensation of employee.*

Where a contract of employment of a manager of a branch of a business to make sales provides a compensation for the manager according to the sales, and makes no distinction between sales for cash and sales on credit, and the manager " agrees in making sales of said goods, that such sales shall be made only to such person or persons as are responsible," the manager is entitled to compensation for sales on credit and not paid for as well as sales for cash, and this construction of the contract is confirmed by the fact that the manager in his accounts submitted to his employer from time to time claimed compensation for sales on credit, and not paid for, and that such accounts were accepted by the employer without objection.

Argued Jan. 7, 1902. Appeal, No. 197, Jan. T., 1901, by defendant, from order of C. P. No. 3, Phila. Co., June T., 1899, No. 914, dismissing exceptions to report of referee in case of Charles E. Sherman v. Consolidated Dental Manufacturing Company. Before McCOLLUM, C. J., MITCHELL, DEAN, FELL, BROWN, MESTREZAT and POTTER, JJ. Reversed.

Assumpsit for a balance alleged to be due under a contract in writing.

For the facts see Sherman v. Consolidated Dental Manufacturing Company, ante, p. 446, and the opinion of the Supreme Court.

*Errors assigned* were in overruling exceptions to report of referee.

*V. Gilpin Robinson* and *Joseph W. Kenworthy*, for appellant.

*John Hampton Barnes*, for appellee.

OPINION BY MR. JUSTICE MITCHELL, May 19, 1902:

This is a cross appeal by plaintiff from the same judgment already considered in Sherman v. Dental Co., appellant, ante, p. 446. The only question now raised is upon the correctness of the referee's statement of the account.

The agreement between the parties, in clause six provides that plaintiff " agrees in making sales of said. goods, that such sales shall be made only to such person or persons as are responsible." This clearly contemplates sales on credit, and so the referee held. But he also held that " it is so obviously the intention that Sherman should not receive this difference for goods consigned, but for goods consigned and sold in the sense of their delivery, and the receipt of their price, and equally clear that it was not intended he should receive this difference (the difference between the list and trade price of every article consigned to him) with respect to goods sold on credit until the price had been got by him or collected by defendant company; that it does not need elaboration." In the last clause of this extract we cannot concur. Certainly the intention was that the plaintiff should not have the difference between trade and list prices on all goods consigned but only on goods sold. So far we go with the referee. But the agreement not only as already said contemplates sales on credit, but it makes no distinction between such sales and those for cash in regard to plaintiff's compensation. The defendant appoints plaintiff its manager " for the sale of" its goods; plaintiff accepts the appointment and "agrees to use his best endeavors to promote the sale," etc., defendant agrees to pay plaintiff "as compensation for his services in selling its goods," etc., and nowhere is any distinction indicated between sales for cash and sales on credit. Plaintiff was merely an employee and the sales he made were sales by the defendant, his employer. The latter permitted the credit sales to go on, the goods to be delivered, and accepted the accounts containing them, so far as appears, with no comment and no reference to their having any bearing on the subject of plaintiff's compensation. The

unavoidable inference is that no difference as to that was contemplated.    The defendant trusted to the discretion of the plaintiff, relying on his business capacity and his expressed obligation to make sales "only to such person or persons as are responsible."    When in June, 1899, it took possession of the assets, including the $12,212.57 of uncollected accounts, it took the latter as part of its business in the Philadelphia branch, made no objection or suggestion of any bearing on the plaintiff's compensation, and so far as appears, raised no subject of controversy except the responsibility for expenses. The claim now made on account of the sales on credit cannot be sustained.    The account should allow plaintiff the stipulated difference between list and trade prices on all his sales, whether for cash or credit.

In the item of $12,212.57 of sales on credit the referee finds that there was included "a part of the $7,835.27 of such accounts which the defendant company had transferred to Sherman on June 7, 1897, and which seemed to have been such as had been created under the contract of December, 1895." There is considerable obscurity about this item, and the terms on which the accounts which it represents under the prior contract, were turned over to plaintiff under the contract of 1897 have not been brought to our attention if indeed they were shown in the case.    Whether plaintiff is entitled to the difference between list and trade prices on these old accounts is therefore not clear, and defendant may if it desires apply to the court below to refer the case back to the referee on this point.

Judgment reversed and record remitted for restatement of account as herein indicated.