25 N.J. Super. 433 (1953)
96 A.2d 450
MARY P. WADE, PLAINTIFF,
v.
PARK VIEW INCORPORATED, A CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT.
Superior Court of New Jersey, Camden County Court Law Division.
Decided March 17, 1953.
*434 Mr. Joseph P. Lodge for the plaintiff.
Mr. Samuel P. Orlando for the defendant (Messrs. Orlando, Devine & Tomlin, attorneys).
PALESE, J.C.C.
This matter is before the court on a motion made by the defendant for a summary judgment pursuant to Rule 3:56-1 of the Rules of Civil Practice, and on plaintiff's motion to strike the fifth defense in the answer.
Plaintiff's complaint alleges that the plaintiff as a tenant in apartment 402, in the Ambassador Building, one of the buildings constituting what is known as Park View Apartments, in Collingswood, on December 16, 1951, sustained a fall on snow or ice upon the sidewalk which was a common approach to the building. She alleges negligence on the part of the defendant in its failure to remove the ice and snow, in its failure to exercise reasonable and ordinary care and diligence in that the defendant should have known the existence of the snow and should have removed it from the common approach; that as a result of the fall she sustained serious injuries. To recover damages for such injuries this action was instituted.
The lease between the parties was in writing and dated October 1, 1950. The defendant admits plaintiff's tenancy, but denies the other allegations of the complaint. The defendant asserts as a fifth separate defense the provisions of paragraph 10 of the lease, admittedly signed and executed by the plaintiff, which provides as follows:
*435 "10. Lessee also agreed to be responsible for and to relieve and hereby relieves lessor from any liability by reason of any damage or injury to any property or to lessee or lessee's guests, servants or employees which may arise from or be due to the use, misuse or abuse of all or any of the elevator hatches, openings, stairways, hallways of any kind whatsoever which may exist or hereafter be erected or constructed on the premises or the sidewalks surrounding the building of which the demised premises is a part or from any kind of damage or injury which may arise from defective construction, failure of water supply, light, power, electric wiring, plumbing or machinery, wind, lightning, storm or any other cause whatsoever on the said premises or the building of which the demised premises is a part, whether such damage, injury, use, misuse or abuse be caused by or result from the negligence of Lessor, its servants or agents or any other person or persons whatsoever."
The motion for the summary judgment is based upon the argument that this exculpatory release clause is effective and binding upon the plaintiff, if it is, then the motion should be granted.
Plaintiff urges: (1) that the complaint constitutes and avers a valid cause of action; (2) that a clause in a lease of an apartment in a multiple-dwelling apartment house, exempting a landlord from all liability for negligence, is contrary to public policy and is null and void, and (3) that even if the release clause is valid, the insertion of that clause in the lease constituted fraud.
By written stipulation the parties agreed that the motion of the defendant for a summary judgment, and the motion of the plaintiff, be submitted to the court for determination on briefs or memoranda, and further that the question of fraud be considered by the court on the depositions of the plaintiff and the law applicable thereto.
It is to be noted that no question was raised nor was it argued that the complaint did not constitute or aver a valid cause of action.
Defendant argues that paragraph 10 of the lease releases defendant from any liability by reason of damage or injury to its lessee which might arise from or be due to the use, misuse or abuse of the premises or sidewalks surrounding them.
*436 The intention of the contracting parties with regard to paragraph 10 of the lease is clear. The words used are unambiguous. Plaintiff's covenant for the release for damages arising from negligence on the part of her landlord was a part of the consideration for the lease itself. It was a writing under seal. Does this writing operate as an exculpatory clause in the lease, and as a release in discharge of any negligence of the landlord?
Our courts have given consideration to contracts containing exculpatory clauses as to negligence. The leading case in this State upon the subject of exculpatory contracts is Globe Home Improvement Co. v. Perth Amboy Chamber of Commerce Credit Rating Bureau, Inc., 116 N.J.L. 168, 182 A. 641, 102 A.L.R. 1068 (E. & A. 1936), wherein the court upheld the validity of these contracts and reiterated the rule that such contracts are valid except in the case of the failure to perform a public duty as in the case of common carriers. Judge Wolfskeil, speaking for the court, said:
"The plaintiff had a right to make an unlimited contract without restriction if the defendant was willing to furnish the information with the sole liability therein provided that would attach thereto, in which case it is to be assumed that it would have paid a premium consistent with that obligation; or it had a right as it did to make a contract presumably for a much smaller sum in which good faith alone in the performance of the contract would be implied. If parties who make ordinary contracts cannot agree to limit the extent of liability, it is difficult to see where such a ruling would lead us. Contracts against liability for negligence we think are universally held valid except in those cases where a public interest is involved, as in the case of carriers, and in such case the action is not on the contract or its breach, but on the failure to perform a public duty. See Tomlinson v. Armour & Co., 75 N.J.L. 748, 70 A. 314, 19 L.R.A. (N.S.) 923."
As early as 1868, our courts recognized the validity of exculpatory contracts. In Kinney v. Central R.R. Co. of N.J., 32 N.J.L. 407 (Sup. Ct. 1868), affirmed 34 N.J.L. 513 (E. & A. 1869), the court held that a contract between an employee who received a free pass and the common carrier exculpating the latter from liability for the negligence of its *437 agents was a valid defense to an action for injuries. The court held that common carriers cannot exempt themselves from liability to fare paying passengers but distinguished this case on the status of the injured person and likened it to ordinary exculpatory contracts. See also Trenton Pass. R. Co. v. Guarantors' Liability Indemnity Co., 60 N.J.L. 246, 37 A. 609, 44 L.R.A. 213 (Sup. Ct. 1897); Morris v. West Jersey & S.R. Co., 87 N.J.L. 579, 94 A. 593 (E. & A. 1915).
This view is approved by the Restatement of Contracts, sec. 402, comment (b); see also 32 Am. Jur. 614; and generally supported by the great majority of other jurisdictions. See Manius v. Housing Authority of Pittsburgh, 350 Pa. 152, 39 A.2d 614 (Sup. Ct. 1944), where a similar clause operated as an exculpatory clause. See also 175 A.L.R. 83, where the following appears:
"Lessors frequently insist upon insertions into the lease contract of an exculpatory clause, specifically or generally providing that the lessor shall not be liable for damages or injuries to the lessee from all or certain causes, and such clauses has been held valid and enforcible in the great majority of jurisdictions although it has been construed as exempting the lessor from liability even in case of acts of his own negligence."
Illustrative of the general exculpatory clause which releases the landlord from all losses of property however occurring is the case of Lerner v. Heicklen, 89 Pa. Super. 234 (Super. Ct. 1926), where the clause was to release the landlord from all liability to the tenant for the loss of property or injuries arising from his or her agents' negligence, and it was also stated in that case that such a clause did not contravene public policy.
The principle enunciated in the Globe case, supra, was cited with approval in the case of Corrigan v. Dun & Bradstreet, 91 F. Supp. 424 (U.S.D. Ct. 1950).
Plaintiff in her brief does not deny the accuracy or soundness of the legal principles stated in the Globe case, supra, that a contract against liability for negligence is valid, but argues that there are exceptions to the legal principles. *438 Counsel argues that the court in the Globe case, supra, observed
"Contracts against liability for negligence we think are universally held valid, except in those cases where a public interest is involved, as in the case of carriers, and in such case, the action is not on the contract or its breach, but on the failure to perform a public duty."
It is strenuously argued that by reason of the language of Judge Wolfskeil in the Globe case, supra, "except in those cases where a public interest is involved, as in the case of carriers," the contract in the instant case involves a public interest and is void. But the court defined and interpreted what it meant by a public interest, when it stated "as in the case of carriers."
It is well settled that a common carrier of passengers cannot by antecedent contract exempt itself from liability to a passenger for hire, for its own negligence or that of its servants. See Sheridan v. New Jersey & N.Y.R. Co., 104 N.J.L. 622, 141 A. 811 (E. & A. 1928).
Plaintiff argues that the contract is invalid in this case because the business of carrying on an apartment house is imbued with the same public interest as is the business of common carriers of passengers for hire; that the defendant maintains four apartment buildings, housing approximately 3,500 people, many of whom are small children. Of course, anytime that people are involved the public is interested, but certainly apartment houses do not have the same public interest with which we are concerned in exculpatory contracts.
The reason for exempting common carriers from the enunciated rule is not present in apartment houses. The reason for exempting common carriers is that a common carrier is a quasi-public agency employing a franchise, and generally a monopoly, to serve the public for and in consideration of the carrier's own profit. Therefore the latter as a matter of public policy will not be permitted, while receiving the profit, to escape the service. One of the elements of that service in the case of a common carrier of passengers for hire *439 is that it and its servants shall use a high degree of care for the safety of the passengers. The public which grants the profit privilege is naturally interested in the performance of the reciprocal service. It is therefore a matter of true public policy which renders void any attempt to contract out of existence the right of the traveling public to have its safety properly conserved at the hands of those instrumentalities which in consideration of such conservation, it has created and authorized to serve it and to take toll for so doing. See Sheridan v. New Jersey and N.Y.R. Co., supra.
Obviously, the defendant as operator of an apartment house does not fall in the category of a common carrier or of allied utilities. The mere fact that large numbers of persons occupy the defendant's premises does not inject into its operation the quality of public interest contended for by plaintiff. I doubt whether plaintiff would argue that an owner of an apartment house containing two apartments could not contract against liability. There is actually no difference between the two apartment buildings and one containing numerous units  except in degree. The legal status is identical.
Consequently, unless the alleged fraud is shown, the provision of the lease exculpating the defendant would make it mandatory upon this court to grant defendant's motion.
Plaintiff testified that she and her co-tenant looked for an apartment at the Park View and found the one desired. A lease was handed to her and she asked if this was the same as ordinary apartment leases. The lessor answered in the affirmative and she signed the lease. She admits that she noticed it contained several pages of printed matter at the time but made no attempt to read the provisions of the lease. She doesn't state that the defendant or any of its employees made any misrepresentations concerning the exculpatory provision but says she was not told it was in the lease. The above recital are the facts upon which plaintiff rests her claim that fraud was practiced upon her.
It has been held in our State that the fact that the plaintiff did not choose to read the contract, or the material *440 parts of it before signing it, or did not know its contents at the time cannot, in the absence of actual fraud, relieve her of its obligations. This doctrine arises from the well-settled principle that affixing a signature to a contract creates a conclusive presumption, except as against fraud, that the signer read, understood and assented to its terms. Fivey v. Pennsylvania Railroad Co., 67 N.J.L. 627, 52 A. 472, 473 (E. & A. 1902); Dunston Lithograph Co. v. Borgo, 84 N.J.L. 323, 87 A. 334 (E. & A. 1913); Sibros, Inc. v. Soloman, 139 N.J. Eq. 528, 52 A.2d 534 (Ch. 1947); Silvestri v. South Orange Storage Corp., 14 N.J. Super. 205, 81 A.2d 502 (App. Div. 1951). See also the numerous cases cited in the Silvestri v. South Orange Storage Corporation case.
The principle enunciated above is dispositive of the issue in this case. The plaintiff's testimony shows nothing more than that she did not read all of the provisions of the lease. Nothing was shown concerning any fraudulent conduct on the part of the defendant. Her failure to read the lease or its material provisions was not induced by any fraud or deception practiced upon her.
Accordingly, the motion for summary judgment in favor of defendant granted, and motion to strike fifth separate defense is denied. Counsel for the defendant will submit an order in conformity with this opinion and I shall sign same.