**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5027-17T1

NORTH MILL EQUIPMENT
FINANCE, LLC, as servicer
for EFS CREDIT TRUST,

      Plaintiff-Respondent,

v.

CINEMACAR LEASING, INC.,
d/b/a CINEMACAR LEASING
and CINEMACAR II, INC.,

      Defendants-Appellants/
      Third-Party Plaintiffs,

v.

PARAMOUNT EXPORTS INC.,
and SAMUEL MASSY as
guarantor,

      Defendants/Third-Party
      Defendants.

_____

Argued December 4, 2019 – Decided February 5, 2020

Before Judges Koblitz, Whipple, and Mawla.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Docket No. L-2358-16.

Thomas A. Lodato argued the cause for appellants.

Rafael J. Corbalan argued the cause for respondent (Kaufman, Semeraro & Leibman, LLP, attorneys; Rafael J. Corbalan, on the brief).

PER CURIAM

Defendants Cinemacar Leasing and Cinemacar II appeal from the May 25, 2018 judgment after a bench trial finding both jointly and severally liable for damages stemming from the breach of their contractual obligation to properly record and perfect plaintiff's lien. We affirm.

We discern the following facts from the record. Plaintiff North Mill Equipment Finance, LLC, is a servicer for EFS Credit Trust[1] which finances commercial vehicle purchases. On October 27, 2014, plaintiff executed a Security Agreement with Paramount Exports Inc., signed by Paramount's president Samuel Massy as personal guarantor, to finance Paramount's purchase of a Volvo truck from defendants. Plaintiff provided $52,389.36 to Paramount, and payments of $1,455.26 were to be made by Paramount over a term of thirty-

---

[1] We refer to North Mill Equipment Finance, LLC and EFS Credit Trust as one plaintiff.

A-5027-17T1

six months.  The Security Agreement provided plaintiff would maintain first lien priority on the Volvo.

Prior to the execution of the Security Agreement, on October 16, Guy Carnazza, president and owner of both defendants Cinemacar Leasing and Cinemacar II, had signed a dealer agreement with plaintiff on behalf of Cinemacar Leasing regarding the Volvo purchase by Paramount.  Paragraph four of the agreement states, in pertinent part:

> If the [e]quipment is a vehicle, also enclosed is a copy of the completed and executed application to title the [e]quipment in the [c]ustomer's name with you as the sole lienholder which the undersigned will promptly process and have the original Certificate of Title delivered to you as soon as available.

The dealer agreement required that, in the event of a breach, "the undersigned, upon your demand, will refund to you all amounts paid by you to the undersigned in connection with the equipment and this transaction, together with interest thereon at a rate of [eighteen percent] per annum or . . . the highest legally permissible interest rate."  The agreement required Cinemacar Leasing to perfect the first priority lien by properly recording it with the Department of Motor Vehicles for the State of New York (DMV).  In addition to the dealer agreement, Carnazza signed a Titling Responsibility Acknowledgement wherein

A-5027-17T1

he accepted the responsibility for any service and/or titling fees necessary to re-title the vehicle.

On July 6, 2015, the Volvo was labeled abandoned, and secured by the Monroe County Sheriff's Department in Monroe, Michigan. On September 2, 2015, the Volvo was sold for storage and towing costs. The "Notice of Abandoned Vehicle" from the Monroe County Sheriff's Office showed their search for the titleholder of the Volvo revealed only the previous owner of the Volvo, GG Barnett Transport, Inc., in Beaver Dam, Wisconsin.

In March 2016, plaintiff filed a complaint against defendants alleging Cinemacar Leasing and Cinemacar II were liable for $39,861.99 plus eighteen percent interest. Defendants filed an answer and asserted a third-party complaint against Paramount and Massy.

In June 2017, plaintiff filed an amended complaint adding Paramount and Massy as direct defendants. Plaintiff's amended complaint asserted breach of contract claims on two separate accounts; a claim for unjust enrichment against Cinemacar Leasing and Cinemacar II for accepting the financing and failing to properly perfect plaintiff's lien; a breach of the implied covenant of good faith and fair dealing; and allegations plaintiff was injured by all defendants' failure to honor their express representations. Plaintiff sought joint and several

4

liability. The complaint also sought judgment against Massy pursuant to his personal guarantee of the security agreement. Neither Paramount nor Massy answered the complaint, and default judgment was entered against them on or around October 3, 2017.

On February 27, 2018, the court conducted a bench trial. Joseph Littier, Senior Vice President of plaintiff North Mill, testified plaintiff viewed Cinemacar Leasing and Cinemacar II as the same company, and had received no notice of the Volvo being abandoned or sold several months later. Littier attributed the lack of notice to plaintiff's lien not being recorded, and asserted had plaintiff received notice, it would have worked with the towing company to get the equipment back. He further testified plaintiff was denied the opportunity to mitigate its damages because it was cut out of the chain of title.

Carnazza testified, admitting that both Cinemacar II and Cinemacar Leasing have the same address and operate out of the same location, and that he is sole owner of both entities. He explained Cinemacar II is a used car sales dealership and Cinemacar Leasing is a leasing company. Although Carnazza signed the dealer agreement as the President of Cinemacar Leasing, he did not notice Cinemacar Leasing was the signatory to the agreement when he signed it and had he noticed, "[he] would have said something."

Carnazza asserted a Notice of Lien form, the document that would have effectuated the creation of the lien in favor of plaintiff, instructed that five dollars must be made payable to the Commissioner of Motor Vehicles, and that one can verify online if the lien was recorded through the DMV website. The form also stated that "[l]iens will not be recorded if information is illegible, incorrect, or incomplete."

Additionally, Carnazza testified the lien form and the accompanying five dollar check were hand-delivered to the DMV in Albany, New York, but that he could not check if the lien was recorded because only the holder of the lien, with a lien filing code, could utilize the DMV website to verify if the lien had been recorded. However, a question on the lien form asking whether a New York Certificate of Title has been issued to the borrower was left blank, and defendants produced no copy or record of the five-dollar payment.

The court issued a written opinion in March 2018, finding a valid agreement between the parties, and that Cinemacar Leasing and Cinemacar II jointly and severally had the obligation under the agreement to properly record the lien. In reaching this conclusion, the court noted that the parties performed under the terms of both the dealer agreement and the Security Agreement for months preceding the abandonment of the vehicle. The court also found that

whether Cinemacar II or Cinemacar Leasing were substituted on two of the documents, it did not render the contract void, as the entities are closely related; owned solely by Carnazza; are in the same building; and in any case, endeavored to perform under the terms of the contract. The court also found defendants breached a duty under the contract by failing to properly record and perfect plaintiff's lien on the Volvo in accordance with terms of the agreement. The court entered judgment in favor of plaintiff and found defendants jointly and severally liable for $39,861.99. Final Judgment was entered on May 25, 2018. This appeal followed.

Our review of a trial court's fact-finding in a non-jury case is limited. Seidman v. Clifton Sav. Bank, S.L.A., 205 N.J. 150, 169 (2011). "The general rule is that findings by the trial court are binding on appeal when supported by adequate, substantial, credible evidence." Ibid. (quoting Cesare v. Cesare, 154 N.J. 394, 411-12 (1998)). "[We] should not disturb the 'factual findings and legal conclusions of the trial judge unless [we are] convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice.'" Cesare, 154 N.J. at 412 (quoting Rova Farms Resort, Inc. v. Investors Ins. Co. of Am., 65 N.J. 474, 484 (1974)). "However, '[a] trial court's interpretation of the law and

the legal consequences that flow from established facts are not entitled to any special deference[,]'" and is subject to de novo review. Mountain Hill, L.L.C. v. Twp. Comm. of Middletown, 403 N.J. Super. 146, 193 (App. Div. 2008) (alteration in original) (citation omitted). "[F]or mixed questions of law and fact, we give deference . . . to the supported factual findings of the trial court, but review de novo the [trial] court's application of any legal rules to such factual findings." State v. Harris, 181 N.J. 391, 416 (2004) (citing State v. Marshall, 148 N.J. 89, 185 (1997)).

On appeal, defendants contend the trial court erred by imposing joint and several liability on Cinemacar Leasing because Cinemacar Leasing had no involvement in the financing deal at issue, and the trial court should have found plaintiff failed to mitigate its claimed damages.

Defendants assert that while Cinemacar Leasing and Cinemacar II share the same owner, have similar names, and have the same business address, the two are separate and unrelated corporations that serve distinct functions because Cinemacar II sells vehicles while Cinemacar Leasing leases vehicles. Defendants assert that Cinemacar Leasing only sells vehicles "when they come back off-lease." Defendants argue Cinemacar II is the only party to a dealer agreement with plaintiff. We disagree.

Carnazza testified he signed the dealer agreement on behalf of Cinemacar Leasing. The trial court found the substitution of Cinemacar Leasing and Cinemacar II on two of the documents did not render the contract void because the companies are closely related, owned solely by Mr. Carnazza, are located in the same building, and endeavored to perform under the terms of the contract.

Ordinarily, "[w]here two corporations are owned and operated by the same individuals, their existence as separate entities will not be disregarded if no deception, fraud or other wrongdoing is shown." Pachman, Current N.J. Statutes Title 14A Corporations § 14A:5 cmt. 6(c)(8) (2019). However, the power to pierce the corporate veil "will be invoked to prevent an independent corporation from being used to defeat the ends of justice, to perpetrate a fraud, to accomplish a crime, or otherwise to evade the law." Tung v. Briant Park Homes, Inc., 287 N.J. Super. 232, 239-40 (App. Div. 1996) (citation omitted). Although piercing the corporate veil often arises in cases where a parent corporation is held liable for its wholly owned subsidiary, New Jersey courts will also pierce the veil of a corporation when justice requires. See Stochastic Decisions, Inc. v. DiDomenico, 236 N.J. Super. 388 393-94 (App. Div. 1989). "[T]he party seeking an exception to the fundamental principle that a corporation is a separate

entity [is charged with] the burden of proving the court should disregard the corporate entity." Tung, 287 N.J. Super. at 240.

Under certain circumstances, veil piercing is appropriate where the corporations are closely identified and there is ambiguity about the manner and capacity in which the various corporations and their representatives are acting. In Stochastic Decisions, 236 N.J. Super. at 395, we affirmed the trial court's decision to pierce the corporate veil because there was a pervasive commingling of corporate assets and identities. There, we found there was no reason to limit the application of veil piercing to parent-subsidiary relationships where the corporate defendants commingled funds and operated in each other's names. Ibid.

Also, in Stochastic Decisions, we endorsed the Massachusetts Supreme Court's decision in My Bread Baking Co. v. Cumberland Farms, Inc., 353 Mass. 614 (1968), where the court pierced the veils of several closely held corporations, finding them liable for conversion. Id. at 394. There, the court reiterated the well-established rule that common ownership and management, standing alone, will not give rise to common liability, but held:

> [A]dditional facts may be such as to permit the conclusion that an agency or similar relationship exists between the entities. Particularly is this true (a) when there is active and direct participation by the

A-5027-17T1

representatives of one corporation, apparently exercising some form of pervasive control, in the activities of another and there is some fraudulent or injurious consequence of the inter-corporate relationship, or (b) when there is a confused intermingling of activity of two or more corporations engaged in a common enterprise with substantial disregard of the separate nature of the corporate entities, or serious ambiguity about the manner and capacity in which the various corporations and their respective representatives are acting. In such circumstances, in imposing liability upon one or more of a group of "closely identified" corporations, a court "need not consider with nicety which of them" ought to be held liable for the act of one corporation "for which the plaintiff deserves payment."

[My Bread Baking Co., 353 Mass. at 619.]

Here, there is no dispute that plaintiff viewed Cinemacar Leasing and Cinemacar II as the same entity. Indeed, the companies have similar names, are located in the same building, and share the same owner and president. The trial court's findings that the companies are "closely related" is supported by Carnazza's testimony that he signed the dealer agreement under Cinemacar Leasing, and the titling agreement under Cinemacar II. Based on these facts, at the very least there existed a "serious ambiguity about the manner and capacity in which the various corporations and their representatives were acting." Where companies act with such disregard to their separate identities, this court "need

not consider with nicety which of them ought to be held liable for the act of one corporation for which the plaintiff deserves payment."

Moreover, Carnazza admitted he signed the dealer agreement on behalf of Cinemacar Leasing. Carnazza's testimony that he did not notice Cinemacar Leasing was the signatory to the agreement, and had he noticed, "[he] would have said something[,]" does not relieve the company of its obligations to perform under the contract, as "in the absence of fraud, one who does not choose to read a contract before signing it cannot later relieve himself of its burdens." Moreira Constr. Co. v. Moretrench Corp., 97 N.J. Super. 391, 394 (App. Div. 1967); see also Wade v. Park View Inc., 25 N.J. Super. 433, 440 (Law Div. 1953) (noting "the well[-]settled principle that affixing a signature to a contract creates a conclusive presumption, except as against fraud, that the signer read, understood and assented to its terms").

We also reject defendants' contention the trial court erred by not finding that plaintiff failed to mitigate its damages. First, defendants argue that plaintiff's damages could have been reduced substantially had plaintiff recovered the Volvo through a replevin action. Second, defendants contend that plaintiff could have prevented the loss of that collateral by recording the lien.

In breach of contract claims "[i]t is well-settled that injured parties have a duty to take reasonable steps to mitigate damages." Ingraham v. Trowbridge Builders, 297 N.J. Super. 72, 83 (App. Div. 1997) (alteration in original) (quoting McDonald v. Mianecki, 79 N.J. 275, 299 (1979)). Damages which the injured party "might have avoided with reasonable effort without undue risk, expense, burden, or humiliation will be considered either as not having been caused by the defendant's wrong or as not being chargeable against the defendant." 11 Williston on Contracts § 64:31 (4th ed. 2018). Whether or not a plaintiff has made reasonable efforts to mitigate its damages is a question for the trier of fact. Ingraham, 297 N.J. at 84. "Thus, the proper standard in a non-jury case regarding the judge's decision on mitigation of damages 'is whether the judge's findings are supported by sufficient, credible evidence in the record.'" Ibid. (citation omitted). We have held however:

> [W]here both the plaintiff and the defendant have had equal opportunity to reduce the damages by the same act and it is equally reasonable to expect a defendant to minimize damages, the defendant is in no position to contend that the plaintiff failed to mitigate. Nor will the award be reduced on account of damages the defendant could have avoided as easily as the plaintiff . . . [.] The duty to mitigate damages is not applicable where the party whose duty it is primarily to perform the contract has equal opportunity for performance and equal knowledge of the consequences of the performance.

A-5027-17T1

[Id. at 83-84 (citations omitted).]

The injured party is not responsible for losses when "the defendant [itself] prevents the [injured party] from taking the steps necessary to avoid them." 11 Corbin on Contracts § 1039 (Interim ed. 1964). Generally, in contract actions the burden of proof on avoidable consequences rests upon the party breaching the contract. Ingraham, 297 N.J. at 83 (citations omitted).

Defendants' arguments, that plaintiff should have mitigated its damages by recovering the Volvo through a replevin action or recording the lien itself, both lack merit. The contention that plaintiff should have recovered the Volvo through replevin makes little sense because plaintiff never received notice of the vehicle being towed. After the Volvo was abandoned and recovered by the Monroe County Sheriff's Department, plaintiff had no recorded lien, and the police who recovered the vehicle identified the prior owner, GG Barnett Transport, Inc., as the current owner/lienholder. The lack of notice was a result of defendants' failure to properly record the lien, and had plaintiff received notice, they would have worked to get the equipment back. Since defendants did not fulfill the contractual obligation of recording the lien, resulting in plaintiff not being notified, plaintiff is not responsible for the losses as "the

defendant [itself] prevent[ed] [plaintiff] from taking the steps necessary to avoid them."

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5027-17T1